**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Toby Bolden Williams,<br><br>                    Plaintiff,<br><br>v.<br><br>Yuma Police Department, et al.,<br><br>                    Defendants. | No.   CV 18-0884-PHX-DGC (CDB)<br><br>**ORDER**<br>**and**<br>**ORDER TO SHOW CAUSE** |

On March 19, 2018, Plaintiff Toby Bolden Williams, who is currently confined in the Arizona State Prison Complex-Lewis in Buckeye, Arizona, filed a pro se civil rights Complaint and paid the filing and administrative fees.  In a May 1, 2018 Order, the Court ordered Plaintiff to serve Defendants and ordered Defendants to answer or otherwise respond to the Complaint.[1]

Pending before the Court are six Motions to Dismiss, which were filed by Yuma County, Smith, and Lackie (the "Yuma County Defendants") (Doc. 46); Defendants City of Yuma, Preciado, Skaggs, and Lekan (the "First City of Yuma Defendants") (Doc. 47); Defendants City of Somerton and Juarez (the "City of Somerton Defendants") (Doc. 52); Defendant Alston (Doc. 62); Defendant Yuma County Risk Management (Doc. 118); and

---

[1] Plaintiff was not incarcerated when he filed his lawsuit and, therefore, his Complaint was not subject to screening pursuant to 28 U.S.C. § 1915A(a).

Defendants City of Yuma Risk Management, Yuma Police Department, and Rodriguez (the "Second City of Yuma Defendants") (Doc. 121). Also pending is Plaintiff's Motion for Summary Judgment (Doc. 57). The Court will grant the Motions to Dismiss, deny the Motion for Summary Judgment, and order Plaintiff to show cause why Defendants Binuya and Villa should not be dismissed for failure to serve.[2]

## I. Plaintiff's Complaint

In his Complaint, Plaintiff seeks monetary damages, attorneys' fees, and court costs from the following Defendants: the City of Yuma, City of Yuma Risk Management, City of Yuma Police Chief John Lekan, Officer M. Preciado, Detective James Skaggs, and Laboratory Technician Adrian Rodriguez; the City of Somerton, City of Somerton Risk Management/Ralph Villa, City of Somerton Police Officer J. Binuya, and Police Detective A. Juarez; Yuma County, Yuma County Risk Management, Yuma County Jail Captain J. Lackie; Yuma County County Attorney Jon R. Smith; and Office of Justice Programs/US Civil Rights Director Michael Alston.[3]

Plaintiff contends that on April 6, 2014, he was stopped during a routine traffic stop, searched, and arrested. (Doc. 1 at 10, 11.)[4] He claims Defendant Preciado brought him to the City of Yuma Police Department for further questioning, read him his *Miranda*[5] rights, and asked Plaintiff if he wanted to talk. (*Id*. at 11.) Plaintiff asserts that although he "did not respond in the affirmative," Defendant Preciado "ignored the [P]laintiff's wishes" and interrogated him for more than thirty minutes. (*Id*.) Plaintiff alleges Defendant Preciado "inherently coerced him to continue with the questioning" and, after Plaintiff "answer[ed]

---

[2] Although the parties have requested oral argument, the Court, in its discretion, declines to grant oral argument because the Court has determined that oral argument would not aid the Court in its understanding of the issues.

[3] Although Defendant Alston is the only federal defendant, the docket reflects the United States of America as a Defendant. The Court will direct the Clerk of Court to terminate the United States as a Defendant from the docket because it was listed in error.

[4] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

questions after initially declining," Defendant Preciado had the duty to *Mirandize* Plaintiff again before using his statements. (*Id*.) Plaintiff asserts this conduct violated his Fifth, Sixth, and Fourteenth Amendment rights. (*Id*.)

Plaintiff alleges Defendant Preciado also coerced Plaintiff's co-defendants when he went into the interrogation room and told them, "Before you tell me anything[,] we are going to say [Plaintiff] had everything." (*Id*.) Plaintiff asserts Defendant Preciado "coached the witnesses with malicious intent to complete an arrest." (*Id*.) Plaintiff claims this violated his Fourteenth Amendment rights. (*Id*.)

Plaintiff alleges that on April 15, 2014, Defendant Skaggs told a grand jury he did not know who owned the vehicle that was stopped, although he met with Plaintiff's co-defendants during an interview on April 9, 2014, and stated, "you are from the traffic stop the other night with [Plaintiff]." (*Id*. at 8, 10.) Plaintiff also claims Defendant Preciado, during the course of the criminal case, "falsi[fi]ed police reports and claimed they had more suspected contraband than they had in order to detail the [P]laintiff in order to take his finger[]prints." (*Id*. at 11.) Plaintiff contends he has an Arizona police laboratory report "where the items that were sent in for this case do not match the claimed amounts." (*Id*.)

Plaintiff alleges Defendant Preciado's actions resulted from a lack of proper training and improper supervision. (*Id*.) Alternatively, he claims Defendant Preciado's actions point "to a de facto policy of non-compliance with the requirements for protection of civil rights" by Defendant City of Yuma Police Department. (*Id*.)

Next, Plaintiff alleges Defendant Yuma County Attorney's Office and Smith maliciously prosecuted him and "ignored evide[]nce that was derived from third[-]party investigative serv[i]ces that showed Dete[ct]ives in this case were l[y]ing." (*Id*.) He claims Defendant Smith acted "willfully, knowingly, and purposefully and/or [with] deliberate indifference" to deprive Plaintiff of his constitutional rights. (*Id*.)

Plaintiff claims Defendant Juarez gave false testimony during a hearing that took place on April 15 and 29, 2015, in Yuma County Superior Court, case numbers S1400CR201400411 and S1400CR201400419. (*Id*. at 10.) He contends Defendant Juarez

lied to the court and violated multiple Defendant City of Somerton policies when he took "the alleged cup home on the night of the incident" and "tur[ned] in a blank evidence bag to [Defendant] Rodriguez the next day." (*Id.*) Plaintiff also takes issue with Defendant Binuya's June 15, 2015 testimony. (*Id.*)

In addition, Plaintiff asserts that while he was incarcerated in the Yuma County Jail, he was denied proper medical care for anxiety, "ADD/ADHD," "ODD," and physical injuries "su[]stained at the time of incar[c]eration." (*Id.* at 11-12.) He also claims he was denied education classes, rehabilitation programs, and religious classes, and was confined in solitary confinement. (*Id.*) He alleges this was done at Defendant Lackie's instruction and Defendant Lackie "directed" Plaintiff's requests for services to be routed to him. (*Id.* at 11.) He also contends Defendant Lackie "became in [an] instant [the] principal of the education services at the jail" so he could review Plaintiff's "confident[i]al IEP repor[t]s," which had confidential medical records attached to them. (*Id.*)

Finally, Plaintiff claims Defendant Alston had a duty to investigate the complaint Plaintiff submitted to the United States Department of Justice (DOJ) and to "act when civil rights and related laws were broken and presented to him," but he "turned a blind eye to police misconduct," "justified police misconduct," and concluded "there was no racial motive in this case." (*Id.* at 7, 10, 11.) He contends Defendant Alston concluded that Plaintiff, who was "the only African American in this case," was not treated differently and stated that Defendant Preciado had given Plaintiff the same chances he gave Plaintiff's co-defendants. (*Id.* at 10, 11.) Plaintiff alleges this conclusion was based on a transcript of the traffic stop interview, but Plaintiff claims Defendant Preciado's statements in the interview do not support a conclusion that Plaintiff was given the same chances given to his co-defendants. (*Id.*)

## II. Motions to Dismiss

### A. Legal Standards

#### 1. Federal Rule of Civil Procedure 12(b)(6)

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of a claim" and "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a Rule 12(b)(6) motion, the court construes all allegations of material fact in the light most favorable to the nonmoving party. *Marcus v. Holder*, 574 F.3d 1182, 1184 (9th Cir. 2009). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, although the court must construe a pro se plaintiff's pleadings "liberally and . . . afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), "[v]ague and conclusory allegations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

When deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.* at 908. A court "may take judicial notice of 'matters of public record'

without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

### 2. Statute of Limitations

"The purpose of a statute of limitation is 'to prevent assertion of stale claims against a defendant.'" *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (quoting *Davidton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1136 (9th Cir. 2001)). The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1).

Accrual of § 1983 claims is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998). To be timely, Plaintiff's claims must have accrued on or after March 19, 2016, two years before his Complaint was filed. Claims that accrued before March 19, 2016, are untimely.

### B. Yuma County Defendants' Motion to Dismiss

In their June 7, 2018 Motion to Dismiss (Doc. 46), the Yuma County Defendants contend Plaintiff's claims against Defendants Lackie and Smith are barred by the statute of limitations, Defendant Yuma County cannot be sued under the doctrine of respondeat superior, and Plaintiff has failed to identify any Yuma County policy or custom that caused his injuries. The Yuma County Defendants also assert Plaintiff's claim against Defendant Lackie regarding the denial of educational benefits is precluded under res judicata and his other claims against Defendant Lackie must be dismissed because Plaintiff has failed to allege any factual content to support them. In addition, the Yuma County Defendants argue Defendant Smith is entitled to absolute immunity and Plaintiff cannot assert a claim of malicious prosecution because the criminal proceedings did not terminate in Plaintiff's

favor.

Plaintiff filed a Response (Doc. 51). Plaintiff does not address most of the issues raised in the Motion, but does provide statements regarding Defendant Lackie's refusal to provide medical care and other services, Plaintiff's placement in solitary confinement, Defendant Lackie's review of Plaintiff's confidential school records, and the Yuma County Defendants' use of confidential documents that were part of an "IEP Administrative [H]earing." Plaintiff seeks sanctions for "any violations" the Yuma County Defendants may have committed by submitting confidential documents. Plaintiff claims the Yuma County Defendants did not "admit[] one way or the other" the allegations in the Complaint and are "simply saying[, ']even if we did it, it is too late because you are tardy.[']" Plaintiff contends the Yuma County Defendants filed their Motion "in bad faith and with dirty hands," asserting that they have "unlimited resources and the skills of multipl[e] lawyers and yet in their documents they don't deny the [P]laintiff's claim." Plaintiff also claims the Yuma County Defendants "withheld information from federal officials during a federal investigation and that include[ed] misleading or failing to come forward with the truth."[6]

Defendants filed a Reply (Doc. 58), reiterating their arguments that Plaintiff's claims are barred by the statute of limitations and should be dismissed because he failed to plead any factual content to support them. Defendants also contend that some of the exhibits attached to Plaintiff's Response should be struck as immaterial and impertinent.

Plaintiff subsequently filed a Response (Doc. 60), claiming the Yuma County Attorney's Office is unconcerned about a detective lying to the grand jury because they sent him a letter saying that Plaintiff should have filed the grand jury transcript under seal. He asserts that the Yuma County Defendants should have been shocked by the detective's conduct and condemned it.[7]

---

[6] Plaintiff has also presented arguments regarding the First City of Yuma Defendants that are inapplicable to this motion and, moreover, are replicated in Plaintiff's Response to the First City of Yuma Defendants' Motion to Dismiss.

[7] On March 3, 2019, Plaintiff filed another Response (Doc. 136) to "any/[]all Defendants' Response to Plaintiff's Motion to Dismiss filed by the Defendants[,] including the initial Motions to Dismiss case with prejudice."

### 1. Defendant Lackie

Plaintiff's claims against Defendant Lackie relate to his confinement in the Yuma County Jail. The Court notes that Plaintiff was transferred to the custody of the Arizona Department of Corrections on October 14, 2015. *See* Doc. 46-1 at 4. At that point, Plaintiff knew or should have known of his injuries. Indeed, the Court notes that Plaintiff filed a June 9, 2014 complaint in this Court in *Williams v. Yuma County Sheriff Department*, CV 14-01272-PHX-DGC (DKD), regarding the alleged failure to provide him with medical care and his placement on lockdown and in an isolation cell, but voluntarily dismissed that case. *See* Docs. 1, 5-6 in CV 14-01272. He also filed a September 29, 2014 due process complaint with the Arizona Office of Administrative Hearings regarding the Yuma County Sheriff's failure to provide him with a free appropriate public education. *See* Doc. 46-15.[8]

Because Plaintiff's claims against Defendant Lackie accrued more than two years before Plaintiff filed his Complaint, his claims are untimely and will be dismissed as barred by the statute of limitations.

### 2. Defendant Smith[9]

Although malicious prosecution claims can be brought against prosecutors and "other persons who have wrongfully caused the charges to be filed," *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir. 2004), "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484. "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *Awabdy*, 368 F.3d at 1068; *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986) ("When a termination or dismissal indicates

---

[8] Plaintiff has provided no support for his contention that Arizona Office of Administrative Hearing documents are confidential.

[9] To the extent Plaintiff is attempting to separately sue the Yuma County Attorney's Office, he cannot do so because the Yuma County Attorney's Office is a nonjural entity. *See Wilson v. Yavapai County*, 2012 WL 1067959 (D. Ariz. 2012) (county sheriff's office and county attorney's office are nonjural entities).

in some fashion that the accused is innocent of wrongdoing it is a favorable termination."). Plaintiff has failed to state a malicious prosecution claim because his criminal charges were not resolved in his favor.

Moreover, as to Plaintiff's claim that Defendant Smith ignored evidence that detectives were lying, prosecutors are absolutely immune from liability for damages under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Immunity even extends to prosecutors for "eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings." *Buckley*, 509 U.S. at 270; *see also Broam v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003) (prosecutor absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges; for knowingly using false testimony at trial; and for deciding not to preserve or turn over exculpatory material before trial, during trial, or after conviction); *Roe v. City & County of San Francisco,* 109 F.3d 578, 583-84 (9th Cir. 1997) (absolute immunity for decision to prosecute or not to prosecute and for professional evaluation of a witness and evidence assembled by the police).

Because Defendant Smith is protected by absolute immunity and because Plaintiff has failed to state a malicious prosecution claim, the Court will dismiss Plaintiff's claims against Defendant Smith.

### 3.     Defendant Yuma County

A § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)). Plaintiff has made no specific allegations against Defendant Yuma County and does not

allege that any of his injuries were the result of a specific Yuma County policy or custom. In addition, to the extent Plaintiff has sued Defendant Yuma County as the supervisor of Defendants Smith and Lackie, Plaintiff has failed to state a claim because there is no respondeat superior liability under § 1983 and a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 663 n.7 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### C. Defendant Yuma County Risk Management's Motion to Dismiss

In its January 4, 2019 Motion to Dismiss (Doc. 118), Defendant Yuma County Risk Management contends Plaintiff has made no allegations against it and, moreover, it is not a proper defendant because it is a nonjural entity. Defendant Yuma County Risk Management also asserts that Plaintiff's claims are barred by the statute of limitations.

Plaintiff filed a Response (Doc. 130). In the Response, Plaintiff does not address any of the issues raised in the Motion but alleges "defendants act as [a] whole in coordinating their continued systematic assault on [him]" and attaches several documents he believes show "the defendants were notified of misconduct committed by law enforcement officers with[]in their city and county and failed to make any efforts to correct the misdeeds."

Defendant Yuma County Risk Management filed a Reply (Doc. 134), noting that Plaintiff failed to provide facts or law to contradict the assertions in the Motion to Dismiss. Defendant Yuma County Risk Management also attempts to respond to the issues presented in the Response.

Defendant Yuma County Risk Management is a subpart of Yuma County, not a separate entity for purposes of suit. *See Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 886 (D. Ariz. 2008) (city police department is a nonjural entity); *Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010) (county sheriff's office is a nonjural entity); *see also Wilson v. Yavapai County*, 2012 WL 1067959, *4 (D. Ariz. 2012) (county

sheriff's office and county attorney's office are nonjural entities). Even if the Court treated Defendants Yuma County Risk Management and Yuma County as the same entity, Plaintiff, as previously noted, has failed to state a claim against Defendant Yuma County. Thus, the Court will dismiss Defendant Yuma County Risk Management.

### D.    The First City of Yuma Defendants' Motion to Dismiss

In their June 7, 2018 Motion to Dismiss (Doc. 47), the First City of Yuma Defendants assert that Plaintiff's claims against them are barred by the statute of limitations or *Heck v. Humphrey*, or are improperly pled.

Plaintiff filed a Response (Doc. 50). He does not address Defendants' arguments. Plaintiff asserts that the Complaint was filed "at the conclusion of a federal Civil rights investigation handled by the US Civil Rights DOJ and OJP" because none of the City of Yuma Defendants "came forward and said the information re[]lied upon by the Federal investigators was incorrect." Plaintiff contends that the Yuma County Defendants filed their Motion "in bad faith and with dirty hands," asserting they have "unlimited resources and the skills of multipl[e] lawyers and yet in their documents they don't deny the [P]laintiff's claim." Plaintiff also claims the First City of Yuma Defendants "withheld information from federal officials during a federal investigation and that include[ed] misleading or failing to come forward with the truth."[10]

The First City of Yuma Defendants filed a Reply (Doc. 54) reiterating their arguments that Plaintiff's claims are barred by the statute of limitations and *Heck*.

### 1.    Defendant Preciado

Although it is unclear whether Plaintiff is asserting claims based on the April 6, 2014 stop, search, and arrest, any such claims accrued more than two years before Plaintiff filed his Complaint; claims for false arrests or unlawful searches and seizures accrue at the time of the violation or when the plaintiff has been detained pursuant to legal process. *See Wallace*, 549 U.S. at 397; *Belanus v. Clark*, 796 F.3d 1021,1026 (9th Cir. 2015) ("a cause

---

[10] Plaintiff has also presented arguments regarding the Yuma County Defendants that are inapplicable to this motion and, moreover, are replicated Plaintiff's Response to the Yuma County Defendants' Motion to Dismiss.

of action for illegal search and seizure accrues when the wrongful act occurs"); *Rollin v. Cook*, 466 F. App'x 665, 666-67 (9th Cir. 2012) (claims related to plaintiff's false arrest accrue on date plaintiff was arraigned and bound over for trial; claims related to illegal search and seizure accrued on the search date). Thus, these claims are barred by the statute of limitations.

As to Plaintiff's *Miranda* claim, unless a coerced statement is "used" in a criminal case, the "failure to read *Miranda* warnings . . . d[oes] not violate [a defendant's] constitutional rights and cannot be grounds for a § 1983 action." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). "A coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009). Even if Plaintiff made a coerced statement and it was used in his criminal cases, his criminal proceedings ended on October 7, 2015, when the state court sentenced him in both criminal cases. *See* Doc. 47-1 at 51-54, 73-76. Thus, Plaintiff's *Miranda* claim is barred by the statute of limitations.

Plaintiff also alleges Defendant Preciado coerced and coached Plaintiff's co-defendants during an interview at the police station, falsified police reports, and claimed there was a greater amount of contraband in order to obtain Plaintiff's fingerprints. These events would have taken place before Plaintiff was sentenced in October 2015. Plaintiff does not allege he was unaware of these events or their resultant harm before March 19, 2016, two years before he filed his lawsuit. Thus, these claims are barred by the statute of limitations.

## 2. Defendant Skaggs

Defendant Skaggs is absolutely immune from liability for his testimony during grand jury proceedings. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."); *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015) ("Witnesses, including police officers, are absolutely immune from liability for testimony . . . before a grand

jury."). Moreover, Plaintiff's claims against Defendant Skaggs are untimely; Defendant Skaggs testified before the grand jury on April 15, 2014, and Plaintiff does not allege he was unaware of the testimony or any harm from it prior to March 19, 2016. Thus, the Court will dismiss Plaintiff's claim against Defendant Skaggs.

### 3. Defendants Lekan and City of Yuma

Plaintiff alleges Defendant Preciado's actions resulted from a lack of proper training and improper supervision or from "a de facto policy of non-compliance" by Defendant City of Yuma Police Department.[11]

As previously discussed, Plaintiff knew or should have known about any injury from Defendant Preciado's conduct more than two years before he filed his Complaint. Thus, Plaintiff's claim is untimely even if the injury may have stemmed from Defendant Lekan's failure to train or supervise or Defendant City of Yuma's "de facto policy." *See McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (applying the accrual date for the underlying constitutional claims to plaintiff's failure-to-train and failure-to-supervise claims because a "§ 1983 claim for failure to train or supervise begins to run when the facts that would support a cause of action are or should be apparent."); *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 437 (9th Cir. 1997) (concluding plaintiffs were apprised of a potential failure to supervise claim against the school district when they knew the abuse took place during school hours by a school district employee).

In addition, to state a claim based on a failure to train or supervise, a plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). A plaintiff must allege facts to support that not only was particular training or supervision inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id.* at 1213-14; *see Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (a

---

[11] The Court has construed this allegation as a claim against Defendant City of Yuma because the City of Yuma Police Department is a subpart of the City of Yuma, not a separate entity for purposes of suit. *See Gotbaum*, 617 F. Supp. 2d at 886 (city police department is a nonjural entity).

plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is [so] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need" (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))).  A plaintiff must also show a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations omitted).  Plaintiff does not make any allegations against Defendant Lekan and, therefore, nothing in his Complaint supports a conclusion that Defendant Lekan failed to train or supervise his subordinates or that his training or supervision was inadequate.

Finally, Plaintiff's allegation that Defendant Preciado's conduct points to a "de facto policy of non-compliance" by the City of Yuma Police Department is insufficient to state a claim against Defendant City of Yuma.  At best, this an insufficient "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### E.  The Second City of Yuma Defendants' Motion to Dismiss

In their January 8, 2019 Motion to Dismiss (Doc. 121), the Second City of Yuma Defendants join in the First City of Yuma Defendants' Motion to Dismiss.  They assert they were not timely served and, if they had been, they would have been included as parties to the First City of Yuma Defendants' Motion when it was filed.  The Second City of Yuma Defendants also contend that Plaintiff's claims against them are barred by the statute of limitations and *Heck* and that Plaintiff has failed to state a claim against Defendants Rodriguez and City of Yuma Risk Management because he has failed to explain "how he believes [they] are involved in the underlying criminal investigations, explain the manner in which he believes they violated his civil rights, or set forth any facts relating to [them]."

Plaintiff filed a Response (Doc. 129).  He alleges "defendants act as [a] whole in coordinating their continued systematic assault on [him]" and attaches several documents he believes show "the defendants were notified of misconduct committed by law

enforcement officers with[]in their city and county and failed to make any efforts to correct the misdeeds." The Second City of Yuma Defendants filed a Reply (Doc. 135), noting that most of Plaintiff's statements in his Response do not relate to them and the assertions relating to them are irrelevant to the issues in the Motion to Dismiss. The Second City of Yuma Defendants note that Plaintiff did not address their grounds for dismissal – that the claims against them are untimely and barred by *Heck* and that his Complaint contains no allegations of material fact against Defendants Rodriguez and Risk Management.

Defendants City of Yuma Risk Management and City of Yuma Police Department are subparts of the City of Yuma, not separate entities for purposes of suit. *See Gotbaum*, 617 F. Supp. 2d at 886 (city police department is a nonjural entity). In addition, as previously noted, the Court is dismissing Plaintiff's claims against Defendant City of Yuma because they are untimely and because Plaintiff has failed to state a claim.

Plaintiff has not alleged what Defendant Rodriguez did or failed to do and how this violated Plaintiff's constitutional rights. Thus, Plaintiff has failed to state a claim against Defendant Rodriguez.

Accordingly, the Court will grant the Second City of Yuma Defendants' Motion and dismiss Defendants City of Yuma Risk Management, City of Yuma Police Department, and Rodriguez.

**F.    City of Somerton Defendants' Motion to Dismiss**

In their June 12, 2018 Motion to Dismiss (Doc. 52), the City of Somerton Defendants assert Plaintiff's claims against them are barred by the statute of limitations and by *Heck*, Plaintiff failed to indicate what right Defendant Juarez violated, and Plaintiff failed to establish municipal liability by identifying which of Defendant City of Somerton's policies violated his rights.

Plaintiff filed a Response (Doc. 55). He claims "[t]his case is about [a] local law enforcement agency omitting and failing to provide investigators with truth[ful] information during a Federal Civil Rights Investigation." Plaintiff asserts that the attorney for the City of Somerton Defendants was the judge who handled Plaintiff's initial hearing

and should have recused himself in this civil case. He contends Defendants Juarez and Binuya committed perjury "in their court testimony and subsequent investigations." He also claims Defendants Juarez and Binuya lied, misrepresented themselves, or omitted evidence in Defendant Alston's civil rights investigation.

### 1. Defendant Juarez

Defendant Juarez is absolutely immune from liability for her testimony, even if she committed perjury. "Witnesses, including police witnesses, are immune from liability for their testimony in earlier proceedings even if they committed perjury." *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001); *see also Holt v. Castaneda*, 832 F.2d 123, 127 (9th Cir. 1987) ("[W]e hold that witnesses who testify in court at adversarial pretrial hearings are absolutely immune from liability under section 1983 for damages allegedly caused by their testimony.").

Moreover, Plaintiff's allegations regarding Defendant Juarez relate to events that took place prior to the court sentencing of Plaintiff in October 2015.[12] Plaintiff does not allege he was unaware of them or their resultant harm at that time or before March 19, 2016. Thus, Plaintiff's claims are untimely.

### 2. Defendant City of Somerton

As previously noted, a § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury. *Sadoski*, 435 F.3d at 1080. Plaintiff has not alleged that his injuries were the result of a specific City of Somerton policy. To the contrary, Plaintiff alleges he was injured when Defendant Juarez's violated multiple City of Somerton policies. Moreover, Defendant City of Somerton is not liable simply because it employs Defendants Juarez and Binuya. *See Monell*, 436 U.S. at 663 n.7;

---

[12] Thus, Plaintiff is incorrect when he asserts that this case concerns the "fail[ure] to provide investigators with truth[ful] information during a Federal Civil Rights Investigation."

- 16 -

*Hamilton*, 981 F.2d at 1067; *Taylor*, 880 F.2d at 1045. Thus, Plaintiff has failed to state a claim against Defendant City of Somerton.

### G. Defendant Alston's Motion to Dismiss

In his July 9, 2018 Motion to Dismiss (Doc. 62), Defendant Alston claims that the Court lacks personal jurisdiction over him, the Court lacks jurisdiction over any claim against him in his official capacity, and Plaintiff failed to state a claim against him because Plaintiff has no liberty interest in compelling the Department of Justice to initiate a civil rights investigation into a local police department.

Plaintiff filed a Response (Doc. 64). He alleges Defendant Alston is in charge of a civil rights department that has "absolute jurisdiction over every state in the US" and is "charged with protecting the rights of US Citizens among other things." In addition to attempting to argue the merits of his claim against the police, Plaintiff claims Defendant Alston responded to e-mails sent from Plaintiff's father and sent a letter stating that "they have reviewed the submitted Traffic transcripts and have found that no collusion or effect was made to coach other suspect to place the blame on the plaintiff." Plaintiff contends that Defendant Alston and the DOJ misrepresented the traffic transcript, ignored Defendant Skaggs's lies to the grand jury, and turned a blind eye to police corruption.

Defendant Alston filed a Reply (Doc. 72). He reiterates his assertions regarding the Court's lack of personal jurisdiction over him and Plaintiff's failure to state a claim against him.

The Court will dismiss Plaintiff's official capacity claim against Defendant Alston because "a *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (quoting *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987)). The Court will also dismiss Plaintiff's individual capacity claim against Defendant Alston. An individual who believes he has been subjected to discrimination prohibited by 42 U.S.C. § 2000d[13] can file a written

---

[13] Section 2000d, 42 U.S.C., provides that "[n]o person in the United States shall,

- 17 -

complaint, and the responsible department official will make a prompt investigation and either resolve the matter by informal means, take action, or inform the complainant, in writing, that the action does not warrant action. *See* 28 C.F.R. § 42.107(b)-(d). Defendant Alston investigated and concluded Plaintiff was not discriminated against. Although Plaintiff disagrees with Defendant Alston's conclusion, Plaintiff was entitled to an investigation, not a particular result. Thus, Plaintiff has failed to state a claim against Defendant Alston. *See Lacy v. County of Maricopa*, 631 F. Supp. 2d 1197, 1205 (D. Ariz. 2008) (no individual due process rights were created where law did not "set forth 'substantive predicates to govern official decision making,'" did not attempt to constrain the decisionmaker's judgment or decisionmaking, and did not "specifically direct any particular result.").

### H. Leave to Amend

Plaintiff has requested leave to amend to correct the deficiencies in his pleadings. *See* Docs. 130 at 2; 129 at 2. Unless it is absolutely clear that no amendment can cure the defects, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action. *See Lucas v. Dept. of Corrections*, 66 F.3d 245, 248-49 (9th Cir. 1995). Here, no amendment could cure the defects related to Defendants' absolute immunity or expiration of the statutes of limitations. But Plaintiff could cure the defects in his § 1983 claims against Yuma County and City of Somerton by identifying a specific policy or custom that caused his injuries, or against City of Yuma by providing more information about the "defacto policy of noncompliance." Plaintiff may have until **April 26, 2019**, to file an amended complaint with respect to his claims against Yuma County and the City of Somerton.

### III. Plaintiff's Motion for Summary Judgment

On June 19, 2018, Plaintiff filed a Motion for Summary Judgment (Doc. 57). In his Motion, Plaintiff notes that the attorney representing Defendant City of Yuma Police

---

on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

Department and others wrote to Plaintiff and informed him that "[e]ven if the allegations in your lawsuit were true, the lawsuit is extremely tardy and well beyond the statutes of limitation." Plaintiff contends this statement shows "that there is no argument about whether the defendants lied in their initial case or subsequent follow up civil rights investigation" and claims Defendants have "taken no responsibility or attempts to correct bad and unlawful behavior by their officers." Plaintiff also contends the attorney representing Defendant City of Somerton is listed as the City Attorney and presided over "several of the events leading up to this case." Plaintiff alleges that "[t]his is an example of the dishonesty and an attempt to enrich oneself by the city attorney assigning a case where the city is the defendant to his law firm." Finally, Plaintiff contends the Yuma County Defendants "failed to deny the allegation and instead have listed confidential documents that w[ere] part of an IEP/IDEA Arizona Administrative hearing" and the attorney representing the Yuma County Defendants also "handled the confidential Administrative [H]earing." Finally, Plaintiff claims this case was 'filed at the conclusion of a Federal Investigation based on defendant[s'] actions and contends that Defendants filed their motions to dismiss "in bad faith and with dirty hands."

The First City of Yuma Defendants filed a Response (Doc. 65) and a Statement of Facts (Doc. 66); the City of Somerton Defendants filed a Response (Doc. 70) and a Statement of Facts (Doc. 71); and the Yuma County Defendants filed a Response (Doc. 74) and a Statement of Facts (Doc. 75). In their Responses, the First City of Yuma Defendants and the Yuma County Defendants argue Plaintiff failed to comply with procedural mandates and the Local Rules of Civil Procedure, summary judgment at this point is contrary to the purpose of summary judgment, and Plaintiff has failed to meet his burden of showing he is entitled to summary judgment. In their Response, the City of Somerton Defendants claim Plaintiff has failed to present admissible facts and has only made "personal attacks and unfounded statements regarding counsel."

Plaintiff filed a "Response to Defend[a]nts' Repl[ie]s to his Motion for Summary Judg[]ment and Defend[a]nt's Motion to Dismiss" (Doc. 76). In that document, he takes

issue with the City of Somerton Defendants' statements in their Response, concluding that the City of Somerton Defendants' attorney is "a liar." Plaintiff also takes issue with statements in the First City of Yuma Defendants' Statement of Facts. Finally, Plaintiff asserts Defendant Alston is a federal employee who "lied[/]omitted evidence of police misconduct and has created an environment at the US DOJ Civil Rights Unit/OJP where turning a blind eye to misconduct is not only tolerated but is encouraged by Executive management [s]uch as [Defendant] Alston."[14] Plaintiff again argues Defendant Alston misrepresented the transcript of the initial arrest, claims the federal government has been involved in his civil rights case, and asserts that federal employees "took an oath to uphold the laws of the United States, [and that] oath does not exempt the other states that the Federal employees currently do not reside in."

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In light of the Court granting the Motions to Dismiss, it is clear Plaintiff is not entitled to judgment as a matter of law. Thus, the Court will deny Plaintiff's Motion for Summary Judgment.

## IV. Defendants Binuya and Villa

Under Rule 4(m) of the Federal Rules of Civil Procedure, if a summons and complaint are not served upon a defendant within 90 days after filing, the court shall, after notice to the plaintiff, either dismiss the action or, if the plaintiff shows good cause for the failure, direct that service be effected within a specified time. *See Walker v. Sumner*, 14 F.3d 1415, 1421–22 (9th Cir. 1994).

Service was returned unexecuted as to Defendants Villa and Binuya on January 3 and February 14, 2019, respectively. (Docs. 119, 131.) According to the docket, neither Defendant has been served, and more than 60 days have elapsed since the Court extended the time for service by 60 days in its November 8, 2018 Order.

---

[14] Plaintiff's arguments relate to Defendant Alston's Motion to Dismiss.

In accordance with the notice requirement in Rule 4(m), Plaintiff has until April 26, 2019 to show cause why Defendants Binuya and Villa should not be dismissed for failure to serve. Failure to respond to this Order to Show Cause will result in dismissal of these two Defendants.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to the six Motions to Dismiss (Docs. 46, 47, 52, 62, 118, and 121) and Plaintiff's Motion for Summary Judgment (Doc. 57).

(2) Defendants Lackie, Yuma County, and Smith's Motion to Dismiss (Doc. 46) is **granted**.

(3) Defendants City of Yuma, Preciado, Skaggs, and Lekan's Motion to Dismiss (Doc. 47) is **granted**.

(4) Defendants City of Somerton and Juarez's Motion to Dismiss (Doc. 52) is **granted**.

(5) Plaintiff's Motion for Summary Judgment (Doc. 57) is **denied**.

(6) Defendant Alston's Motion to Dismiss (Doc. 62) is **granted**.

(7) Defendant Yuma County Risk Management's Motion to Dismiss (Doc. 118) is **granted**.

(8) Defendants City of Yuma Risk Management, Yuma Police Department, and Rodriguez's Motion to Dismiss (Doc. 121) is **granted**.

(9) Defendants Yuma Police Department, Preciado, Juarez, Skaggs, Smith, Lackie, City of Yuma, City of Somerton, Yuma County, Lekan, Rodriguez, Alston, Yuma County Risk Management, and City of Yuma Risk Management are **dismissed with prejudice**.

(10) The Clerk of Court must **terminate** the United States as a Defendant.

(11) Plaintiff may have until **April 26, 2019**, to file an amended complaint with respect to his claims against City of Yuma, Yuma County, and the City of Somerton, as explained above.

(12)     By **April 26, 2019**, Plaintiff must show cause why Defendants Binuya and Villa should not be dismissed for failure to serve.

Dated this 27th day of March, 2019.

*David G. Campbell*

David G. Campbell
Senior United States District Judge